UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────

CHRISTINA DELPRADO,

                  Plaintiff,

   -against-                             1:12-CV-0673 (LEK/RFT)

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.; UNITED HEALTH
GROUP INCORPORATED; UNITED
HEALTHCARE SERVICES, INC.;
UNITED HEALTH GROUP LONG TERM
DISABILITY PLAN; UNITED HEALTH
GROUP SHORT TERM DISABILITY
PLAN,

                  Defendants.
────────────────────────────────────

## MEMORANDUM-DECISION and ORDER

**I.   INTRODUCTION**

This is an action for damages under the Employee Retirement Income Security Act of 1974 ("ERISA"),[1] the Family and Medical Leave Act of 1993 ("FMLA"),[2] and state law. See Dkt. No. 11 ("Amended Complaint") ¶ 4. Currently before the Court is Defendants' Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Count IV of Plaintiff Christina Delprado's ("Plaintiff") Amended Complaint. Dkt. No. 16 ("Motion") at 1. For the following reasons, the Motion is granted.

**II.   BACKGROUND**

    **A.   Factual Background**

---

[1] 29 U.S.C. § 1001 et seq.

[2] Id. § 2601 et seq.

The Court presumes the parties' familiarity with the factual allegations underlying this action and recites them here only to the extent necessary to resolve Defendants' Motion. For a more complete statement of the facts, reference is made to the Amended Complaint.

Plaintiff began work as a case manager with Defendant United Healthcare Services, Inc. ("UHC"), on March 12, 2007. Am. Compl. ¶¶ 24-25. In July 2009, Plaintiff began to suffer from "exacerbated acute diffuse chronic joint pain and severe fatigue." Id. ¶ 26. Doctors thereafter diagnosed the cause of Plaintiff's pain and fatigue as "diffuse and somatic pain, gradual progressive poly and diffuse arthralgias, underlying worsening osteoarthritis, worsening rheumatoid arthritis, predominant fibrostic syndrome, possible viral syndrome, possible connective tissue disease, and lymphadenitis." Id. ¶ 27.

On August 2, 2010, as a result of these non-work-related medical conditions, Plaintiff became disabled and unable to perform the material duties of her job. Id. ¶¶ 28-29. She has been disabled continuously since that time. Id. ¶ 30. On October 22, 2010, Defendant UHC terminated Plaintiff's job protection under the FMLA. Id. ¶ 33. Later, on February 18, 2011, Defendant UHC terminated Plaintiff's employment. Id. ¶ 34.

At the onset of her disability, Plaintiff was insured and eligible for benefits under the two disability insurance plans provided to Defendant UHC's employees: the United Health Group Short-Term Disability Insurance Plan ("STD Plan") and the United Health Group Long-Term Disability Insurance Plan ("LTD Plan") (collectively, "the Plans").[3] Id. ¶¶ 35, 106. Defendant United Health Group Inc. ("UHG") is the Plans' administrator but has "delegated responsibility and authority for

---

[3] The Court notes that Plaintiff has also named the Plans as Defendants in this action. See generally Am. Compl.

2

administrating claims under" the Plans to Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick"). Id. ¶ 19-21. Defendant Sedgwick is a fiduciary of the Plans and has the "exclusive administrative right and discretion with respect to claims and appeals, to interpret each Plan's terms[,] and [to] administer each Plan's benefits." Id. ¶ 23.

On approximately August 2, 2010, Plaintiff filed with Defendant Sedgwick her first claim for short-term disability insurance benefits under the STD Plan. Id. ¶ 41. Defendant Sedgwick eventually denied the claim as well as Plaintiff's subsequent appeals. Id. ¶¶ 48, 52-53, 62-64. On September 13, 2010, Plaintiff was diagnosed with fibromyalgia. Id. ¶ 69. Based on this diagnosis, Plaintiff filed with Defendant Sedgwick her second claim under the STD Plan on October 28, 2010. Id. ¶ 72. Defendant Sedgwick denied the claim and Plaintiff's subsequent appeals. Id. ¶¶ 76, 93, 101.

On January 24, 2011, Plaintiff requested from Defendant Sedgwick the forms required to file a claim under the LTD Plan. Id. ¶¶ 113, 152. Defendant Sedgwick, however, refused to provide Plaintiff with the forms. Id. ¶¶ 114, 153. Plaintiff made a second request for the forms on January 31, 2011. Id. ¶¶ 115, 152. Again, Defendant Sedgwick refused Plaintiff's request. Id. ¶¶ 116, 153. Finally, after Plaintiff's third request on April 12, 2011, Defendant Sedgwick provided her with the forms, and Plaintiff was able to file a claim under the LTD Plan on April 27, 2011. See id. ¶¶ 118-19. Defendant Sedgwick denied Plaintiff's claim as well as her subsequent appeals. Id. ¶¶ 123, 134, 141.

**B. Procedural Background**

On March 20, 2012, Plaintiff filed a Complaint in the New York Supreme Court, Saratoga County, challenging Defendant Sedgwick's denial of her claims under the Plans and Defendant

UHC's termination of her job protection under the FMLA. Id. ¶ 1; Dkt. No. 1-2 ("Complaint"). On April 23, 2012, Defendants removed this action to the Northern District of New York, asserting that the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332.[4]

On May 30, 2012, Defendants filed a Motion seeking partial dismissal of Plaintiff's Complaint. Dkt. No. 8 ("May Motion"). After Plaintiff filed her Amended Complaint on June 18, 2012, Defendants filed a Letter Motion with the Court requesting to withdraw the May Motion in its entirety. Am. Compl; Dkt. No. 14 ("Letter Motion"). The Court granted the Letter Motion, and Defendants subsequently filed the instant Motion on July 2, 2012. Dkt. No. 15; Mot.

In their Motion, Defendants ask the Court to dismiss Count IV of Plaintiff's Amended Complaint. Defendants' Memorandum of law in support (Dkt. No. 16-5) ("Mem.") at 1. Count IV alleges that "[Defendant] Sedgwick failed to provide forms, documents and materials, and [to] fulfill the requirements and obligations to . . . Plaintiff under [ERISA]." Am. Compl. ¶ 164. Plaintiff asserts Count IV against each Defendant, seeking to hold each "jointly and severally . . . liable to . . . Plaintiff for statutory damages and penalties pursuant to ERISA in an amount to be determined by the Court, plus attorney's fees, costs, and disbursements of this action." Id. ¶ 165.

As the Court explains fully below, Count IV of Plaintiff's Amended Complaint is fatally flawed as a matter of law.

---

[4] Plaintiff does not object to Defendants' removal. Am. Compl. ¶ 7. The Court concludes that it has jurisdiction over this action under § 1331 because Plaintiff's claims arise under ERISA and the FMLA. The Court concludes that it also has jurisdiction under § 1332 because there is complete diversity of citizenship between the parties. See id. ¶¶ 13-16.

**III.	LEGAL STANDARD**

When a court evaluates a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), it must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the nonmovant's favor. Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]," Twombly, 550 U.S. at 556, and "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." Id. at 678 (quoting Twombly, 550 U.S. at 556). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (internal quotation marks omitted). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the complaint is subject to dismissal. See id. at 679.

**IV.	DISCUSSION**

    **A. Statutory Basis for Count IV**

As an initial matter, the Court must determine the statutory basis for Count IV of Plaintiff's Amended Complaint. Although Plaintiff alleges in Count IV that Defendant Sedgwick "failed to

5

provide forms, documents and materials, and [to] fulfill the requirements and obligations to . . . Plaintiff under [ERISA]," she fails to specify under which ERISA civil-remedies provision Count IV arises. See Am. Compl. ¶¶ 164-65. Defendants, left to divine Plaintiff's intentions on their own, reasonably assumed that Count IV arose under ERISA §§ 502(a)(1)(A) and 502(c)(1)(B). Mem. at 8-9. Section 502(a)(1)(A) empowers an ERISA plan participant or beneficiary to bring a civil action "for the relief provided in subsection (c) of this section." 29 U.S.C. § 1132(a)(1)(A). Section 502(c)(1)(B), in turn, provides that

> [a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure to refusal . . . .

Id. § 1132(c)(1)(B). As Defendants correctly point out, the only provision in ERISA requiring a response to a participant's or beneficiary's request for documents is contained in § 104(b)(4), which provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Id. § 1024(b)(4); Mem. at 8-9.

Plaintiff does not dispute that Count IV arises, at least in part, under §§ 502(a)(1)(A) and 502(c)(1)(B). See Plaintiff's Memorandum of law in response and opposition (Dkt. No. 21-2) ("Resp.") at 15-16. She does, however, argue that Defendants "misconstrued" her allegations in Count IV by limiting them to "statutory penalties" under those provisions. Id. at 15. According to Plaintiff, Count IV also seeks "statutory damages" under ERISA §§ 502(a)(1)(B) and 502(a)(3). Section 502(a)(1)(B) empowers an ERISA plan participant or beneficiary to bring a civil action "to

6

recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), while § 502(a)(3) authorizes civil actions by an ERISA plan participant, beneficiary, or fiduciary "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Id. § 1132(a)(3).

Contrary to Plaintiff's contentions, neither § 502(a)(1)(B) nor § 502(a)(3) "encompass[]" statutory damages, which are defined as "[d]amages provided by statute . . . , as distinguished from damages provided under the common law." BLACK'S LAW DICTIONARY 448 (9th ed. 2009). Congress authorizes statutory damages by specifying their amount in a statute, and absent such specific authorization, statutory damages are unavailable under that statute. Here, Congress clearly has not authorized statutory damages under § 502(a)(1)(B) because that provision neither contains a specified amount of damages available for its violation nor makes reference to such damages specified in any other ERISA provision. Instead, § 502(a)(1)(B) authorizes a plan participant or beneficiary to recover only "benefits due to him under the terms of his plan." Thus, the amount of damages a plan participant or beneficiary can recover under § 502(a)(1)(B) is not determined by ERISA itself but by the terms of the plan claimed to have been violated.[5] Likewise, § 502(a)(3) does not, by its terms, provide for statutory damages. In fact, § 502(a)(3) does not even permit a

---

[5] The Court notes that although Plaintiff has not specified under which ERISA civil-remedies provision her Counts I through III arise, they would likely arise under § 502(a)(1)(B) because they seek to recover the benefits Plaintiff claims to be due under the Plans. See Am. Compl. ¶¶ 154-62. Thus, were Count IV to arise under § 502(a)(1)(B), it would likely be duplicative of Counts I through III.

plaintiff to recover damages at all, but provides only for equitable relief. Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 630 (2d Cir. 2008) ("In order to state a claim under ERISA section 502(a)(3), 'the type of relief a plaintiff requests must . . . be equitable.' Claims for money damages are therefore not cognizable under section 502(a)(3)." (quoting Coan v. Kaufman, 457 F.3d 250, 264 (2d Cir. 2006))); see also Thurber v. Aetna Life Ins. Co., Nos. 12-370-cv, 12-521-cv, 2013 WL 950704, at *5-9 (2d. Cir. Mar. 13, 2012) (finding that the defendant's counterclaim seeking the return of overpaid short-term benefits under § 502(a)(3) was "appropriate equitable relief"); Schlenger v. Fidelity Employer Servs. Co., 785 F. Supp. 2d. 317, 336-37 (S.D.N.Y. 2011) (rejecting the plaintiff's claim under § 502(a)(3) because it sought money damages, not equitable relief). Because statutory damages are not available under § 502(a)(1)(B) or § 502(a)(3), neither provision can serve as a basis for the relief Plaintiff purports to seek in Count IV.

Section 502(a)(1)(A) does, however, empower a plan participant or beneficiary to recover the statutory damages authorized in § 502(c)(1)(B). See id. at 631; Viti v. Guardian Life Ins. Co. of Am., 817 F. Supp. 2d 214, 233 (S.D.N.Y. 2011) ("29 U.S.C. § 1132(c) authorizes an award of sanctions, in the form of statutory damages . . . ."). Furthermore, § 104(b)(4) is the only ERISA provision that addresses situations arguably similar to the one at issue here: Sedgwick's refusal to provide Plaintiff with the forms she needed to file a claim under the LTD Plan. Therefore, the Court concludes that Plaintiff's Count IV arises under these provisions, not under § 502(a)(1)(B) or § 502(a)(3).[6]

---

[6] The Court also rejects as meritless Plaintiff's argument that Count IV cannot be dismissed because "Defendants do not argue dismissal of statutory damages." Resp. at 16. Defendants did, in fact, expressly argue for dismissal of statutory damages in several places in their Memorandum of law. Mem. at 10 ("Accordingly, Plaintiff cannot recover statutory damages against Sedgwick, UHS, or the Disability Plan as a matter of law." (citing cases specifically referring to the availability of

**B. Liability Under ERISA § 502(c)(1)(B)**

   *1. Defendants Sedgwick, UHC, and the Plans*

A party is liable for statutory damages under § 502(c)(1)(B) only if the terms of the ERISA plan specifically designate the party as the "plan administrator." Krauss, 517 F.3d at 631, cited in Schelenger, 785 F. Supp. 2d at 335-36; Viti, 817 F. Supp. 2d at 233-34. Other parties, including plan fiduciaries, who are not so designated, are therefore immune from suit under § 502(c)(1)(B). See Lee v. Burkhart, 991 F.2d 1004, 1010 n.5 (2d Cir. 1993) ("Some courts have held that under certain circumstances a party not designated as an administrator may be liable for failing to furnish a plan description. We disagree." (citations omitted)); Viti, 817 F. Supp. 2d at 233-34 (dismissing a § 502(c)(1)(B) claim against a claim administrator, as opposed to a plan administrator).

   Plaintiff claims in her Response that she previously refused to withdraw Count IV after Defendants requested that she do so in a letter dated June 22, 2012, because she "is entitled to discovery regarding who are the fiduciaries and in-fact plan and claims administrator liable under ERISA." Resp. at 11. Plaintiff now opposes the Court's considering the Summary Plan Description ("SPD") and 2010 Annual Return/Report for the Employee Benefit Plan ("2010 Annual R/R") that Defendants submitted in support of their Motion without first converting the Motion to one for summary judgment and giving Plaintiff an opportunity to conduct discovery. Id. at 13-14; Dkt. Nos. 16-2, 16-3. Furthermore, Plaintiff challenges the SPD on the grounds that it lacks foundation, is not authenticated, is incomplete, and is irrelevant because dated before Plaintiff's claims arose. Resp. at 14-15. Defendants counter by asserting that the Court need not even consider the SPD and 2010

---

statutory damages under § 502(c)(1))); id. at 11 ("Count IV of the Amended Complaint fails to state a claim for statutory damages against UHG as a matter of law.").

Annual R/R to decide the Motion because Plaintiff alleges in her Amended Complaint that Defendant UHG, not any of the other Defendants, is the Plans' administrator. Defendants' Reply Memorandum of law (Dkt. No. 26-2) at 3-5.

The Court agrees with Defendants. Plaintiff expressly identified Defendant UHG as the Plans' administrator in her Amended Complaint and cannot now argue uncertainty over this fact in opposition to Defendants' Motion. Am. Compl. ¶¶ 19-20; Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2d Cir. 2002) ("[T]he allegations in [a] . . . Complaint are 'judicial admissions' by which . . . [a plaintiff] is 'bound throughout the course of the proceeding." (quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985))). Therefore, the Court need not consider Plaintiff's arguments concerning the SPD and 2010 Annual R/R further because the Court need not consider those documents in order to decide the Motion.

The Court concludes that no basis exists under the law of this Circuit for holding Defendants Sedgwick, UHS, and the Plans liable under § 502(c)(1)(B). With respect to Defendant Sedgwick, the facts of this case are analogous to those considered in Viti. There, the defendant was a claims administrator "vested with authority to construe the terms of the [ERISA p]lan and to render claim determinations."[7] Viti, 817 F. Supp. 2d at 219, 233. The Viti court held that despite the defendant's authority to interpret the plan and determine claims under it, the defendant could not be found liable

---

[7] The Court notes that although Plaintiff argues against the Court's considering the SPD and 2010 Annual R/R, Plaintiff generously quotes the SPD in her Response to support her arguments therein. See Resp. at 16-17. One of the quotations identifies Defendant Sedgwick as the Plans' "Claims Administrator." Id. at 17. Moreover, Plaintiff identified Defendant Sedgwick as the Plans' "claim administrator" in her June 28, 2012 letter to Defendants, which Plaintiff also quotes in her Response. Id. at 11-12.

10

under § 502(c)(1)(B) because the plan failed to specifically designate the defendant as its administrator.[8]  Id. at 233-34.  Here, Plaintiff alleges that Defendant Sedgwick has authority similar to that of the defendant in Viti to interpret the Plans and to determine claims under them.  Am. Compl. ¶¶ 21-23.  But, as already mentioned above, Plaintiff also alleges that Defendant UHG, not Defendant Sedgwick, is the Plans' administrator.  Am. Compl. ¶¶ 19-20.  Therefore, the Court follows Viti and holds that Defendant Sedgwick cannot be found liable under § 502(c)(1)(B).[9]

The Court also holds that Defendants UHS and the Plans cannot be found liable under § 502(c)(1)(B) for the same reason: because Defendant UHG is the Plans' administrator according to Plaintiff's own allegations in her Amended Complaint.  See Krauss, 517 F.3d at 631; Schelenger, 785 F. Supp. 2d at 335-36.  Accordingly, Defendants' Motion is granted as to Defendants Sedgwick, UHS, and the Plans.

---

[8] Indeed, the plan did not specifically designate *anyone* as its administrator.  Viti, 817 F. Supp. 2d at 234.  Applying Second Circuit precedent, however, the Southern District concluded that the plan sponsor, not the defendant, was the plan's administrator for purposes of § 502(c)(1)(B).  Id. (applying Lee, 991 F.2d at 1010).

[9] Plaintiff also argues that it may have been Defendant Sedgwick's "unwritten practice" to "refer requests for forms, documents and materials to [Defendant] UHG, which would hold both Sedgwick and UHG liable."  Resp. at 18.  Thus, Plaintiff argues, the Court should deny Defendants' Motion and permit Count IV to proceed to discovery.  Id.
   It is unclear to the Court just how Plaintiff's theory operates or whether it would hold Defendant Sedgwick liable under § 502(c)(1)(B) or some other ERISA provision.  However, even if Plaintiff's theory would impose liability on Defendant Sedgwick under § 502(c)(1)(B)—which the Court doubts highly—Plaintiff has neither made this "unwritten practice" claim nor alleged any facts that would support such a claim in her Amended Complaint.  See generally Am. Compl.  In making this and other arguments, Plaintiff continues to rely on Conley v. Gibson's "no set of facts" pleading standard.  355 U.S. 41, 45-46 (1957).  As the Supreme Court held in Iqbal, however, a complaint must now allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Plaintiff has failed to meet that burden with respect to her "unwritten practice" argument, and the Court therefore rejects it.

11

  *2. Defendant UHG*

  "A plan administrator may not be held liable for requests directed to someone other than the administrator." Giordano v. Thomson, No. 03-CV-5672, 2007 WL 1580081, at *4 (E.D.N.Y. May 29, 2007) (citing Hiney Printing Co. v. Brantner, 243 F.3d 956, 960-61 (6th Cir. 2001)); see also Davenport v. Harry N. Abrams, Inc., 249 F.3d 130, 135 (2d Cir. 2001) ("By its terms, ERISA allows for civil penalties only if *an administrator* has refused to comply with a request for information." (emphasis added)). Here, Plaintiff alleges that she made requests for LTD Plan claim forms only to Defendant Sedgwick.[10] Am. Compl. ¶¶ 113, 115, 118, 152. Therefore, the Court holds that Defendant UHG, the Plans' administrator, cannot be held liable under § 502(c)(1)(B) for Defendant Sedgwick's refusal to provide Plaintiff the claim forms.[11] Accordingly, Defendants' Motion is granted as to Defendant UHG.

**V. CONCLUSION**

  Accordingly, it is hereby:

  **ORDERED**, that Defendant's Motion (Dkt. No. 16) to dismiss Count IV of Plaintiff's Amended Complaint (Dkt. No. 11) for failure to state a claim upon which relief can be granted is

---

[10] Again, Plaintiff's argument in her Response that Defendant Sedgwick may have passed her requests for the claim forms onto Defendant UHG under some "unwritten practice" is not supported by *any* factual assertions in her Amended Complaint, let alone sufficient factual material to meet her burden under Iqbal.

[11] The Court notes in passing that the claim forms may not be the kind of documents contemplated by § 104(b)(4). See Bd. of Tr. of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 142 (2d Cir. 1997) ("Use of the preposition 'under,' rather than *with* or *through*, suggests that by 'instruments,' Congress meant the formal legal documents that govern or confine a plan's operations, rather than the routine documents with which or by means of which a plan conducts its operations." (emphasis in original)); Viti, 817 F. Supp. 2d at 234; Bilello v. JPMorgan Chase Ret. Plan, 649 F. Supp. 2d 142, 168 (S.D.N.Y. 2009).

**GRANTED**; and it is further

**ORDERED**, that Count IV of Plaintiff's Amended Complaint (Dkt. No. 11) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties.

**IT IS SO ORDERED**.

DATED:    March 20, 2013
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge